**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PATRICK J. LALLY, ET AL.,** | ) | **CASE NO.1:08CV1664** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **BP PRODUCTS NORTH AMERICA, INC.,** | ) | **OPINION AND ORDER** |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendant BP Products North America, Inc.'s ("BP"), Motion to Dismiss or, Alternatively for Summary Judgment (ECF# 12). For the following reasons, the Court grants, in part, and denies, in part, Defendant's Motion.

On June 11, 2008, Plaintiffs Patrick J. Lally, Michael J. Lally and Tim Lally Chevrolet, Inc., filed this action in Cuyahoga County Court of Common Pleas. The Complaint alleges contamination of certain parcels of land, previously owned by Plaintiffs, due to leakage of petroleum products from underground gasoline storage tanks and/or the operation of gas and service stations on land previously owned by Defendant BP or its predecessor The Standard Oil

1

Company. Plaintiffs allege they contacted BP about the contamination but BP refused to remediate the contamination. Plaintiffs attempted to sell the contaminated parcels but the purchaser wanted the property remediated within six months or it would not purchase the property. Plaintiffs paid for the remediation in order to effectuate the sale and the property was eventually sold to its present owner, Walgreen Co. Plaintiffs incurred costs of approximately $900,000 to remediate the property, and in their Complaint, allege claims of trespass, negligence and nuisance.

On September 11, 2008, the Court held a Case Management Conference attended by counsel of all parties. Per the discussions at the Case Management Conference the Court determined that the threshold issue of the applicable statute of limitations should be addressed via dispositive motion. The parties agreed that the relevant facts were not largely in dispute and further agreed to prepare a stipulated statement of facts. The Court ordered the parties to engage in limited discovery on the relevant facts. On October 23, 2008, the parties submitted the Parties Joint Stipulated Statement of Facts. Attached to the stipulation was a map of the property, a warranty deed, the Phase I and II Environmental Site Assessment Reports ("ESA"), a memo and correspondence between counsel. On October 27, 2008, Defendant filed its Motion to Dismiss or, Alternatively for Summary Judgment. The motion is fully briefed and is ripe for ruling because no party has requested additional discovery under Fed. R. Civ. P. 56. Because the arguments presented to this Court involve facts outside the pleadings, the Court will treat Defendant's Motion as a Motion for Summary Judgment.

## **FACTS**

Per the parties' stipulation, the following facts are not in dispute. In 1955, The Standard

Oil Company, a predecessor in interest of BP, acquired Cuyahoga County Permanent Parcel Number 812-05-025 (" parcel 25"). From approximately 1955 to 1965 The Standard Oil Company owned and/or operated a gasoline filling station on parcel 25. On July 13, 1965, The Standard Oil Company conveyed parcel 25 to Mosher-Lally Realty Company. In 1970, Mosher-Lally Realty Company conveyed parcel 25 to Floyd Mosher, who conveyed parcel 25 to Donald Mosher in 1971. In 1986, Donald Mosher conveyed parcel 25 to Plaintiff Tim Lally Chevrolet, Inc.

In 1993, Myrl and Norma Biggs conveyed Cuyahoga County Permanent Parcel Number 812-05-024 ("parcel 24") to Thomas R. Lally. In 1998, the Last Will and Testament of Thomas R. Lally granted parcel 24 to Michael J. Lally and Patrick Lally. In 2006, the Waltrust parcel, which included parcels 24 and 25, was conveyed to Greystone-Group-Bedfor Limited, which then conveyed the Waltrust Parcel to Walgreen Co. approximately eight months later. On January 12, 2007, Walgreen Co. transferred the Waltrust Parcel to Waltrust Properties, Inc. It is unclear from the Parties Joint Stipulated Statement of Facts whether BP or its predecessor ever owned, leased or occupied parcel 24. (See paragraph 17 of the Stipulated Statement of Facts wherein parcel 24 is excluded from the list of relevant parcels which BP disavows owning, leasing or occupying.)

In August 1993, The McKenzie Group, Inc., an environmental consulting firm, performed a Phase I Environmental Site Assessment on a number of parcels for Tim Lally Chevrolet, Inc. including parcels 24 and 25. They recommended sampling and investigating the former underground storage tank site located on parcel 25. In January of 1994, the McKenzie Group, Inc. performed a Phase II ESA on the same parcels, which included taking soils samples

3

from parcels 24 and 25.  The ESA discovered the presence of contaminants in the soil samples of parcels 24 and 25 resulting from the release of petroleum but found no underground storage tanks.  The Phase II ESA report did not determine the full extent of the contamination.   In March of 1994, Patrick Lally contacted BP about the presence of contaminants.  Beginning in April 1994 Plaintiffs and Defendant began corresponding on the environmental condition of the property and the reported contamination.

## **STANDARD OF REVIEW**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *accord Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 2006); *Turner v. City of Taylor*, 412 F.3d 629, 637 (6th Cir. 2005).  The initial burden to demonstrate the absence of a genuine issue of material fact rests with the moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  "When a motion for summary judgment is properly made and supported" the initial burden shifts to the opposing party, who "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *accord Leadbetter v. Gilley*, 385 F.3d 683, 689-90 (6th Cir. 2004); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003).  A fact is material only if its resolution

"might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

When deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006); *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). "Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true." *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004). However, summary judgment should be granted if the party bearing the burden of proof at trial does not establish an essential element of its case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. 317). Furthermore, the court is not required "to search the entire record to establish that it is bereft of a genuine issue of material fact." *Betkerur v. Aultman Hosp. Ass'n.*, 78 F.3d 1079, 1087 (6th Circ. 1996). Rather, the burden falls on the non-moving party to designate specific facts or evidence in dispute. *Anderson*, 477 U.S. at 249-250

### **The Subject Property**

Plaintiffs" Complaint alleges that the "subject property" is the real property "located at the northwest corner of the intersection of Broadway Avenue and West Grace Street." (Complaint para. 4). The Complaint further alleges "the subject property is identified on Exhibit "B" as Parcels 24 and 25." (*Id*.) Later, the Complaint alleges parcels 24 and 25 "were contaminated by leaks of petroleum product containing vessels located on parcel 25..." (Complaint at 13). All three counts in Plaintiffs' Complaint allege the contamination of the "subject property" as the actionable tort. Nowhere does the Complaint allege contamination of the other surrounding parcels owned by Plaintiffs. However, in its Brief in Opposition to

5

Defendant's Motion, Plaintiffs describe the "subject real estate" as parcel numbers 812-05-21, 812-05-22, 812-05-23, 812-05-24, 812-05-25, 812-05-26, 812-05-27 and 812-05-28. (Brief in Opposition pg. 2). Furthermore, Plaintiffs state in their Brief in Opposition that Plaintiffs' Complaint "asserts three causes of action arising from the presence of petroleum product released from the parcels formerly owned and operated by BP as gasoline filling stations as stated above in ¶¶ 8 and 9 onto the properties owned by Lally, and known as Cuyahoga County Permanent Parcel No.'s 812-05-21, 812-05-022, 812-05-023, 812-05-024, 812-05-025, 812-05-026, 812-05-027, 812-05-028." (Brief in Opp. Pg.3).

Plaintiffs' may not expand the scope of their claims in an opposition to a summary judgment motion. See *Tucker v. Union of Needletrades, Industrial and Textile Employees, et al.,* 407 F.3d 784 (6th Cir. 2005). The Sixth Circuit in *Tucker* discussed the rationale against permitting the assertion of new claims in response to a summary judgment motion.

> Once a case has progressed to the summary judgment stage, therefore, "the liberal pleading standards under *Swierkiewicz* and [the Federal Rules] are inapplicable." *Gilmour v. Gates, McDonald & Co.,* 382 F.3d 1312, 1315 (11th Cir.2004) (holding that a plaintiff could not raise a new claim in response to a summary judgment motion); *see also* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2723 (3d ed. Supp.2005) ("A non-moving party plaintiff may not raise a new legal claim for the first time in response to the opposing party's summary judgment motion. At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Rule 15(a).").
> To permit a plaintiff to do otherwise would subject defendants to unfair surprise. *See Guiffre v. Local Lodge No. 1124,* No. 90-3540, 1991 WL 135576, at *5 (6th Cir. July 24, 1991) (unpublished) (refusing to hear claims raised for the first time in opposition to summary judgment because, "[h]aving received no notice of them, the defendants had no opportunity to investigate them when they conducted their own discovery"); *see also EEOC v. J.H. Routh Packing Co.,* 246 F.3d 850, 854 (6th Cir.2001) (stating that even

>under the liberal notice-pleading regime, the Federal Rules of Civil Procedure still require "that the complaint give the defendant fair notice of the claim and its supporting facts").

*Id.* at 788.

Plaintiffs cannot change the definition and description of the "subject property" at this stage of the proceedings because Defendant has not had an opportunity to do discovery on the additional parcels. Plaintiffs' Complaint expressly limited the subject property to parcels 24 and 25. The stipulated facts only refer to contamination of parcels 24 and 25. The ESAs state soil samples were taken only from parcels 24 and 25. Plaintiffs have submitted no evidence in opposition to Defendant's Motion other than referencing the stipulated facts and evidentiary materials attached to it.[1] Plaintiffs' have not moved to amend their Complaint. Therefore, the Court finds the claims are limited to the alleged contamination of parcels 24 and 25.

## **LAW AND ANALYSIS**

Defendant BP contends that Plaintiffs' common law claims for trespass, negligence and nuisance are all barred by the applicable statute of limitations. Furthermore, Defendant contends Plaintiffs' causes of action fail to state claims upon which relief may be granted because BP owed no duty of care to the subsequent owners of the property.

### **Trespass**

In Ohio, "the essential elements necessary to state a cause of action in trespass are: (1) an unauthorized intentional act, and (2) entry upon land in the possession of another." *Brown v. Scioto Cty Bd. Of Commissioners,* 87 Ohio App.3d 704, 716 (4th Dist. Scioto Cty., 1993).

---

[1] Plaintiffs' Brief in Opposition references an affidavit of John Dyer, Esq. as Exhibit A and further states the affidavit is attached to the Brief in Opposition. The docket does not reflect an attachment.

7

Trespasses to real property are governed by a four-year statute of limitations. Ohio Revised Code §2305.09(A). Plaintiffs' Complaint alleges the contamination of Plaintiff's subject property "constitutes actionable permanent trespass, continuing trespass and trespass." (Complaint ¶ 26). The time begins to run when Plaintiffs discovered or should have discovered with reasonable diligence the damage to its property. *Jones v. Hughey* 153 Ohio App.3d 314, 319 (10th Dist, Franklin Cty. 2003).

Defendant argues that the latest the statute of limitations began to run was March 1994 when Plaintiffs informed Defendant of the contamination. The parties have stipulated that Plaintiffs discovered the contamination in 1993-1994 when the ESAs were performed. The ESAs not only detected the presence of the contamination but determined the likely source was former gas station operations. Because this action was not brought until June 2008, Defendant contends Plaintiffs' trespass claim is barred by the applicable statute of limitations.

Before the Court can determine whether the applicable statute of limitations period has run it must first determine what type of trespass is implicated. Plaintiffs' Complaint contends the "contamination constitutes actionable permanent trespass, continuing trespass, and trespass." (Complaint ¶ 25). The parties dispute the type of trespass involved. Defendant contends its tortious actions, if any, constitute a permanent trespass since Defendant last owned parcel 25 in 1965 and there hasn't been a gasoline filling station on the property since that time. Plaintiffs contend Defendant's tortious acts constitute a continuing trespass which would toll the applicable four year statute of limitations.

The Ohio Supreme Court recently clarified the concepts of continuing trespass versus a permanent trespass in the case of *Sexton v. City of Mason,* 117 Ohio St.3d 275 (2008). The

8

Court held, " ... a continuing trespass in this context occurs when there is some continuing or ongoing allegedly tortious activity attributable to the defendant. A permanent trespass occurs when the defendant's allegedly tortious act has been fully accomplished." *Id.* at 282. When determining whether a defendant has committed a continuing trespass, this Court may not consider whether the damages is ongoing or persists, rather, the Court must examine whether some ongoing tortious activity may be attributed to Defendant. *Sexton* at 282, *Abraham v. BP Exploration & Oil, Inc.,* 149 Ohio App.3d 471, 477 (10th Dist. Franklin Cty. 2002). The Ohio Supreme Court in *Sexton* also determined that the control exerted by the Defendant over the situation plays a substantive role in determining continuing versus permanent trespass. In *Sexton,* the court found that because Defendant sold the property in question it no longer could rectify the ongoing situation and that lack of control made its trespass permanent rather than continuous. Because BP sold parcel 25 over forty years ago, and any contamination from parcel 25 occurred prior to that date, the Court finds Defendant BP's actions constitute a permanent trespass.[2] Defendant or its predecessor's allegedly tortious conduct would have concluded by 1965 when the property was sold and gas station operations ceased. The parties have stipulated that Plaintiffs were aware of the contamination in 1994. Therefore, the statute of limitations began to run from that date and Plaintiffs' claim for trespass for contamination from parcel 25 is barred, as Plaintiffs did not bring suit until nearly fourteen years later.

**Nuisance**

---

[2] The evidence before the Court indicates any underground storage tanks used in the operation of the gasoline station on parcel 25 were removed at the time BP sold the property in the mid 1960's and gasoline station operations ceased on the property at the time of the sale.

Much the same as trespass, a nuisance may be continuing or permanent. A permanent nuisance "occurs when the defendant's tortious act has been fully accomplished but injury to the plaintiff's estate from that act persists in the absence of further conduct by the defendant." *Weir v. East Ohio Gas Company,* Mahoning App. No. 01 CA 207, 2003 WL 1194080, ¶ 18 (Ohio App. 7th Dist., March 12, 2003). A continuing nuisance occurs when "the defendant's tortious activity is ongoing, perpetually creating fresh violations of the plaintiff's property rights." *Id.* The statute of limitations is four years. O.R.C. §2305.09(A).

The Court finds Plaintiffs' nuisance claim for damages resulting from the presence of underground tanks or gas station operations on parcel 25 is barred by the four year limitations period for the same reasons their trespass claims are barred. The nuisance is a permanent nuisance under Ohio law, because there is no continuing tortious conduct by Defendant. The sale of the property by BP in 1965 along with near simultaneous removal of the underground storage tanks and the cessation of gas station operations means no further tortious conduct by Defendant occurred after 1965. Plaintiffs knew of the contamination at the latest in 1994, informed Defendant of the contamination and then failed to bring an action until June 11, 2008. Therefore, the Court grants summary judgment for Defendant on Plaintiffs' nuisance claim for damages resulting from Defendant's prior operations on parcel 25, as the claim is untimely.

**Negligence**

For the same reasons, the Court grants summary judgment for Defendant on Plaintiffs' claim of negligence. Plaintiffs' Complaint at paragraph 29 states, "such contamination constitutes actionable negligence." Because Plaintiffs were aware of the contamination in 1994 but did not file this claim until 2008, Plaintiffs' claim is barred by the four year statute of

limitations for torts to real property. Any alleged negligent conduct by Defendant's arising from its ownership and/or operations on parcel 25 must have ceased in 1965 when the property was sold, the storage tanks removed and gas station operations ended.

However, Plaintiffs contend Defendant BP's refusal to remediate the property constitutes BP's ongoing tortious conduct which tolls the applicable statute of limitations. The Court finds Plaintiffs argument fails for several reasons. First, Plaintiffs' Complaint does not allege that BP's refusal to remediate constitutes ongoing, continuous tortious conduct. Rather, the Complaint states specifically, for each of Plaintiffs' three claims that the actionable conduct is the contamination. Under Count One at paragraphs 24 and 25 Plaintiffs' Complaint states "such contamination constitutes actionable permanent trespass, continuing trespass, and trespass." At Count Two at paragraphs 28 and 29 Plaintiffs allege Defendant caused the contamination and therefore, "such contamination constitutes actionable negligence." Finally, under Count Three at paragraphs 32 and 33 "such contamination constitutes actionable nuisance." Plaintiffs' Complaint does state Defendant refused to remediate the property but this is stated as a fact, not as an independent claim, nor does the Complaint allege the refusal to remediate constitutes actionable tortious conduct.

Second, Plaintiffs have failed to meet their burden demonstrating that Defendant owed Plaintiff a duty to remediate the property. The Court has not been provided with any caselaw supporting Plaintiffs' argument that Defendant has a duty to remediate the contaminated property. Ohio case law holds that there is no common law duty of care to subsequent owners of the same land for contamination of the property. *Dartron v. Uniroyal Chemical Company, Inc.,* 893 F. Supp. 730 (N.D. Ohio 1995). Therefore, BP owes no common law duty of care to

11

Plaintiffs for the contamination of parcel 25.  As for the contamination of parcel 24, Ohio law does impose a duty of care on the owner of real property to keep harmful substances stored on his property from leaking onto the property of adjacent property.  *Defiance Water Co. v. Olinger,* 54 Ohio St. 532 (1896).  However, the Court has not been apprised of any duty to remediate at common law.   In *Weir supra*, the Ohio appellate court stated,

> Appellants have failed to demonstrate a duty, beyond the terms of the federal settlement agreement, and we cannot discern the existence of any duty on the part of East Ohio to clean up their property. Thus, Appellants' claim that Ohio Edison failed to remediate the site, and was therefore negligent, fails because, without a duty, there can be no breach.

¶ 13.

Plaintiffs cite to *Abraham supra,* for the proposition that a duty to remediate exists.  Plaintiffs quote the *Abraham* decision as stating, "because BP was the last entity to have operated the underground tanks, pursuant to R.C. 3737.87, BP was required to remove the contamination regardless of fault."  *Abraham* at 50.  However, this statement was part of the appellate court's recitation of the facts and did not constitute a finding on the part of the court.  Furthermore, O.R.C. 3737.87 does not provide a basis for a private right of action.  *Bendik v. Hudson Oil Co.,* No. 1:97 CV 1711, 2000 WL 33788504 *4 (N.D. Ohio Mar. 22, 2000).  Also, the statute was not enacted until 1987, whereas BP sold the property and removed the underground storage tanks in 1965, therefore, is not applicable to the facts herein.  Finally, the Court finds persuasive Defendant's argument that there can be no separate, independent tort for refusal to remediate because such a tort which would amount to a Defendant's refusal to concede liability and would render the statute of limitations meaningless as long as a Defendant insisted

12

on its right to contest liability.  Furthermore, a refusal to remediate cannot be tortious activity, at least until there is some predicate finding of causation or liability.

Even assuming *arguendo*, a duty to remediate existed, Plaintiffs knew of the contamination in 1994 yet failed to bring suit until 2008.  Therefore, the four year statute of limitations for torts to real property has run and Plaintiffs common law claims for refusal to remediate contamination from parcel 25 are barred.

Lastly, Plaintiffs argue the warranty deed, transferring parcel 25 from The Standard Oil Company to Mosher-Realty Company in 1965 contains a warranty that the "Grantor will warrant and defend said Promises, with the appurtenances thereunto belonging, to the said Grantee, its successors and assigns, against all lawful claims and demands whatsoever..."

Defendant claims the warranty was nothing more than the standard covenants contained in warranty deeds.  Defendant contends the warranty language is "warranties of seisin, of quiet enjoyment and against encumbrances, all of which warrant against specific real property interests held by others."  The applicable paragraph of the warranty reads as follows:

> And the Grantor does for itself, its successors and assigns, covenant with the Grantee, its successors and assigns, that at and until the ensealing of these presents it is well seized of the above described Premises as a good and indefeasible estate in fee simple, and has good right to bargain and sell the same in manner and form as above written, and that the same are free from all encumbrances whatsoever, except restrictions, agreements and easements of record, if any, zoning restrictions, if any, and taxes and assessments, both general and special for the last half of the year 1964, and thereafter, and that Grantor will warrant and defend said Premises, with the appurtenances thereunto belonging, to the said Grantee, its successors and assigns, against all lawful claims and demands whatsoever except as above named.

(See, Jt. Stip. Ex. B, p. 2).

The Court agrees with Defendant that the warranty does not warrant against the condition of the property itself; rather, it warrants against claims of encumbrances to clear title. Furthermore, Plaintiffs do not claim breach of warranty in their Complaint. Therefore, the Court does not read the warranty language as imposing a duty upon Defendant to maintain the property or to act as an insurer of the property's condition.

Therefore, the Court grants Defendant's summary judgment on all counts for its activities on parcel 25 prior to Defendant's sale of the property in 1965.

However, Plaintiffs' Complaint alleges that the contamination of parcels 24 and 25 may also have been the result of Defendant's operation of a gasoline station on property diagonal to parcels 24 and 25. Paragraph 12 of Plaintiffs' Complaint alleges that The Standard Oil Company, a predecessor of BP, owned and operated a gas and service station diagonally opposite the gas and service station owned and operated by BP on parcel 25. The Complaint then states in paragraph 13, "as a consequence of the gas and service station business operations, parcels 24 and 25 of the subject property were contaminated by leaks of petroleum product containing vessels located on Parcel 25 of the subject property or the gas and service station operation of The Standard Oil Company, a predecessor of Defendant BP Products North America Inc." The Complaint does not limit the possible source of contamination to operations on parcel 25 but also alleges the contamination may have been caused by the gas and service station operations diagonally opposite parcel 25. In their Joint Stipulated Statement of Facts, the parties state in paragraph 7, "The Standard Oil Company owned and/or operated a gasoline filling station diagonally across the intersection from Parcel 25 at some time." The Court has not been provided any evidence of the time frame in which gas and service station operations

continued on this property, if they are still continuing, or if BP presently owns the property. Neither the parties' stipulation of facts, nor evidence attached to the stipulation limits the source of the contamination to the activities on parcel 25 alone. Defendant's dispositive motion is limited to the claims of contamination resulting from the ownership and operations of BP on parcel 25. The Motion is silent on the allegations of contamination as a result of operations of the gas station diagonal to parcel 25. Because the Court has no evidence on the dates of ownership or operations of this additional gas and service station the Court cannot make a determination whether the alleged tortious acts were continuous or permanent and therefore, the Court is unable to make a legal determination on whether the statute of limitations has run. Consequently, the Court must deny summary judgment for Defendant on Plaintiffs' claims based on Defendant's ownership and operation of the gas and service station diagonal to parcel 25.

IT IS SO ORDERED.


S/Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge


May 11, 2009